UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JASON E. STRIMEL, )
)
    Plaintiff, )
)
v. ) CIV. NO. 2:16-cv-226-MCLC
)
NANCY BERRYHILL, )
Acting Commissioner of Social Security, )
)
    Defendant. )

**MEMORANDUM OPINION AND ORDER**

This matter is before the United States Magistrate Judge with consent of the parties and by order of reference [Doc. 17] for disposition and entry of a final judgment. Plaintiff's application for Title II Disability Insurance Benefits and/or Title XVI Supplemental Security Income under the Social Security Act was administratively denied following a hearing before an Administrative Law Judge ("ALJ"). This is an action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Plaintiff filed a Motion for Judgment on the Pleadings [Doc. 18] and Defendant filed a Motion for Summary Judgment [Doc. 20].

**I.    APPLICABLE LAW – STANDARD OF REVIEW**

The scope of review of the Commissioner's findings is narrow. The Court is confined to determining (1) whether substantial evidence supported the factual findings of the ALJ and (2) whether the Commissioner conformed with the relevant legal standards. 42 U.S.C. § 405(g); *see Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989). "Substantial evidence" is defined as evidence that is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury.

*Lemaster v. Sec'y of Health & Humans Servs.,* 802 F.2d 839, 841 (6th Cir. 1986). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). However, a decision supported by substantial evidence "will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

A claimant must be under a "disability" as defined by the Social Security Act to be eligible for benefits. Within the statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent the claimant from (1) performing his past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. 42 U.S.C. § 423(a).

A five-step sequential evaluation process applies in disability determinations. 20 C.F.R. §§ 404.1520 & 416.920. A dispositive finding at any step ends a review. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The complete review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's [Residual Functional Capacity], can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience,

and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

It is the claimant's burden to establish an entitlement to benefits by proving the existence of a disability under 42 U.S.C. §§ 423(d)(1)(A) or 1382c(a)(3)(A). *See Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). The Commissioner has the burden to establish the claimant's ability to work at step five. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## II. RELEVANT FACTS AND PROCEDURAL OVERVIEW

### A. Procedural History

Jason E. Strimel ("Strimel"), was found to have the severe impairments of degenerative disc disease and borderline intellectual functioning per the Decision.[1] (Doc. 13, Transcript p.15) (reference to "Tr" and the page denote the administrative record). He was a younger person under the regulations at the time of his January 8, 2013 application, 20 C.F.R. §§ 404.1563 and 416.963. He alleged a disability onset date of December 15, 2011, (Tr. 12), and his insured status expired on December 31, 2011. (Tr. 15).

Strimel's claims were initially denied on June 27, 2013, and again upon reconsideration on October 14, 2013. (Tr. 107). An ALJ conducted a hearing on December 11, 2014. Plaintiff testified; a Vocational Expert ("VE") was present but did not testify. (Tr. 30-38).

The ALJ conducted the five-step analysis in evaluating the claims. The ALJ's Decision, (Tr. 13), made several findings, including that Strimel was not disabled:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011;

---

[1] Plaintiff's application and submissions indicate he has a kidney condition and scoliosis.

2. The claimant has not engaged in substantial gainful activity since December 15, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: degenerative disc disease and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except it should be unskilled and entry-level work;

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on September 26, 1983, and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);[2]

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2011, though the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-24).[3]

The Appeals Council denied Plaintiff's review request. (Tr. 2).

---

[2] Strimel remained categorized as a younger person at the time of the Decision.
[3] A discussion follows many of the findings. Such discussion is not repeated here unless necessary.

**B. Evidence in the Record**

The Decision reviews and discusses the underlying medical evidence. (Tr. 15-19). Strimel's brief summarizes the record evidence [Doc. 19, pp. 2-5] and the Commissioner's brief does likewise [Doc. 21, pp. 2-7]. The transcript contains records from the consultants who examined Strimel, Wayne P. Gilbert, M.D. regarding physical conditions and Arthur Stair, M.A. and Charlton Stanley, Ph.D. for mental conditions. (Tr. 257-62). State agency reviewers also reviewed and opined about Strimel's conditions. (Tr. 57-94). Reference to the evidence herein, both medical and otherwise, is only set forth as necessary.

**III. ANALYSIS**

On appeal, the primary issue for review is whether substantial evidence supports the Commissioner's decision. Plaintiff Strimel argues the ALJ erred in the analysis of his subjective complaints and credibility, erred in finding he has the residual function capacity to perform a full range of medium work, and erred by relying upon the Medical-Vocational Guidelines and Grid instead of a vocational expert given his mental impairments and restrictions. [Doc. 19, pp. 7-10].

**A. Evaluation of Subjective Complaints**

"An ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted). Further, "[a]n ALJ's "findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F. 3d 525, 531 (6th Cir. 1997). The assessment of credibility must be supported by substantial evidence. *Id.*

With regard to cases in which the symptoms of the underlying conditions are the claimed cause of the disability, as is the situation here, the Sixth Circuit has offered additional guidance relative to assessing credibility and subjective complaints:

5

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001); *Felisky v. Bowen,* 35 F.3d 1027, 1038–39 (6th Cir.1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.* Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id.; see also* Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *2–3 (July 2, 1996) (Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements).

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

The ALJ followed the aforementioned process[4] and found that Plaintiff has underlying medically determinable impairments relating to his back (Tr. 15). The ALJ then evaluated the intensity, persistence and limiting effects of the claimed symptoms on the ability to do basic work activities pursuant to the relevant factors identified in *Rogers*.

The ALJ primarily relied on the dearth of medical evidence and treatment history[5] to support his determinations as to subjective complaints and credibility as contemplated SSR 96-7p[6]

---

[4] Plaintiff sought disability based upon two medical issues, "problems with kidneys" and scoliosis. (Tr. 46). The ALJ found one severe medical impairment, specifically degenerative disc disease, along with borderline intellectual functioning.

[5] Plaintiff indicated he lacks health insurance during his testimony in response to his counsel's question but did not explain how or whether this has affected his treatment or assert that his insured status affected treatment sought prior to or subsequent to the alleged disability onset date. (Tr. 35). He does not raise error here on this topic, however.

[6] This Ruling was in effect at the time of the hearing and Decision, but was subsequently superseded by SSR 16-3p on March 28, 2016.

and *Rogers*. The Sixth Circuit authority specifically addresses the relationship of alleged pain to sparse treatment: "When a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 F.App'x 841, 846 (6th Cir. 2004)(citations omitted); *see also Myatt v. Comm'r of Soc. Sec.*, 251 F.App'x. 332 (6th Cir. 2007) (explaining that a modest treatment regimen is inconsistent with total disability).

Plaintiff's medical records are very limited; there are no mental health records except for the consultative report.[7] (Tr. 244-384). The few records referring to a back condition address little about history or symptoms, beyond pain, and do not address treatment. (Tr. 367). In fact, Strimel sought no treatment for his back until 2014. (Tr. 16, 264, 359).

The absence of efforts by Plaintiff to obtain treatment, in the face of the reasonable expectation that he would seek treatment and pain mitigation, undermines Plaintiff's claims of disabling pain and limitations. The same is true of Plaintiff's erratic treatment for his kidney conditions, which were the primary issues identified in the February and October 2013 function reports he completed for the Social Security Administration (Tr. 198-205, 214-21). The failure to pursue recommended kidney evaluation and care for multiple months, (Tr. 335, 318-22), and lack of compliance with prescriptions issued to him or pursuit of medication to control symptoms also undermine Plaintiff's assertions. (Tr. 36-37).

The ALJ addressed Plaintiff's activities of daily living in conjunction with his subjective complaints. Strimel submitted information about such activities as a part of his disability application. (Tr. 197-202). His activities include meal preparation, visiting his mother, spending time with his girlfriend and doing things such as walking, throwing a ball, or going to the store.

---

[7] Many of the documents in the medical section of the transcript contain no medical data, such as general discharge instructions, or medical data that is not particularly pertinent here, such as blood test results. (Tr. 247-48, 280-83).

7

(Tr. 197-202, 214-18). The ALJ noted these activities and then aptly observed that this range of activities are not limited in the manner one would expect in light of the complaints of disabling symptoms and limitations. (Tr. 22).

Work history may be weighed in evaluating credibility and intensity and persistence of symptoms. *See* 20 C.F.R. § 404.1529(c)(3) & 416.929(c)(3). A good work history and attempts to continue working in spite of disability may support credibility, *see White v. Comm'r of Soc. Sec.*, 312 F.App'x 779, 789 (6th Cir. 2009), while poor work history "might stem from [an] inability to work as easily as [an] unwillingness to work." *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).

Strimel's history prior to the alleged disability onset in December 2011 began in 2003 when he was about age 20. (Tr. 187). The history is sporadic with several full years between 2003 and 2011 in which no employment was identified on Plaintiff's application and no earnings listed on his earnings reports. (Tr. 168-71, 187). The ALJ properly noted the sporadic work history raised a question as to whether his ongoing unemployment was actually the result of medical issues. (*Id.*)

The ALJ ultimately determined Strimel does not have medically determinable impairments that would be expected to result in the restrictions claimed, a topic discussed at greater length in Section B herein, and that the allegations of disabling pain and symptoms were not entirely credible or supported by the evidence. (*Id.*) The Court concurs with this analysis and gives great weight to same per the case authority. Thus, the record contains substantial evidence to support the Decision.

**B.      Residual Functional Capacity for Medium Work**

Plaintiff alleges the finding that he has the residual functional capacity ("RFC") to perform medium jobs was not supported by the record evidence or the opinion of the consulting medical examiner, Dr. Wayne Gilbert. He also argues that the state agency reviewers opined that Plaintiff had postural limitations and the ALJ erroneously failed to consider same. [Doc. 19, p. 9].

In April 2014, Dr. Gilbert examined Plaintiff and diagnosed scoliosis. While noted a congenital obstruction of the uteropelvic junction was reported, he did not indicate he concurred. (Tr. 265).

Dr. Gilbert's report described the results of his testing of Plaintiff's strength, range of motion and physical movements. (Tr. 265). Plaintiff had a full range of motion in his upper extremities and shoulders, cervical spine, elbows, wrists, hands and fingers, hips, knees and ankles, while experiencing some pain and limitation in lumbar spine flexion. (Tr. 265). He had a range of strengths in his major muscle groups and was able to stand on either foot and manipulate the opposite foot, squat and stand back up, and walk on his heels and toes. (*Id.*) After listing these test results, Dr. Gilbert identified Strimel's "anticipated limitations":

> The patient can sit for 30 minutes, stand for 10 to 15 minutes. He can walk 50 feet. He can lift 10 pounds and he can carry 10 pounds occasionally. [T]hese physical complaints may be exaggerated. It is anticipated that, if he does not have correction of the reported urinary problem, that he could well develop renal failure and require such things as dialysis or renal transplant at some time in the future, this will not likely be done if he does not have some sort of medical insurance coverage.
>
> Medical evidence of the record provided was reviewed and these findings were considered in the overall assessment of the patient.

(Tr. 266).

The ALJ gave "little weight" to Dr. Gilbert's opinion because he believed the assessed limitations were inconsistent with the overall objective medical findings of record and due to the physician's statement that Strimel's physical complaints "may be exaggerated." (Tr. 23).

State agency reviewers, Nathaniel Robinson, M.D. and Joseph Curtsinger, M.D., also provided opinions, although neither physically examined Plaintiff. While the reviewers acknowledged that Strimel's impairments could produce some of the symptoms reported, both found Dr. Gilbert's report overly restrictive based upon the evidence of record. (Tr. 61-62, 89-90).

The reviewers believed the claimed intensity, persistence and limiting effects were not credible to the extent described. Plaintiff's activities of daily living served to bolster this belief. (*Id.*).

The reviewers next addressed Plaintiff's exertional limitations and determined he could occasionally lift 50 pounds, frequently lift 25 pounds and stand, walk and sit (with breaks) for about 6 hours in an 8-hour workday. (Tr. 60, 88). With regard to postural limitations, the reviewers noted that Plaintiff can frequently climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, frequently balance, stoop, kneel, crouch and crawl. (Tr. 61, 89).

The reviewers' limitations reflect a residual functional capacity to perform medium work:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567 & 416.967. The ALJ gave "some weight" to the reviewers' opinions and found Plaintiff had the residual functional capacity to perform medium work.

The medical records existing prior to and after the alleged disability onset date are very limited; there are no mental health records beyond the consultative report.[8] The medical records relative to Plaintiff's back condition are primarily radiologic reports (Tr. 367) and offer no information or history as to symptoms and pain and do not address treatment. Plaintiff appears to have sought no treatment for his back until 2014 and, in fact, reported to Dr. Gilbert in April 2013 that he had x-rays of his back after a motorcycle accident in 2008 with "no followup" thereafter. (Tr. 16, 264, 359). The few office treatment notes focus on Plaintiff's urological and kidney issues or other complaints, not his purported back condition. (Tr. 250-52, 318-37). Even those records reveal Plaintiff's limited pursuit of treatment. As the ALJ aptly notes, a local hospital advised Plaintiff obtained a urology evaluation with a specialist in January 2013. (Tr. 23, 328, 336).

---

[8] Many records in the Transcript's medical section contain no actual medical data, such as general discharge instructions, or the data is not particularly pertinent to disability. (Tr. 247-48, 280-83).

Plaintiff delayed obtaining an evaluation until mid-November 2013 after which time surgery was performed and symptom relief achieved, at least in part. (Tr. 22, 318-22).

Plaintiff also failed to seek treatment relative to his mental health conditions despite his complaints of depression and hyperactivity. (Tr. 22, 257). Plaintiff told the consulting examiner for Dr. Charlton Stanley's report that he suffered from these conditions, but was not taking any medications for them and had not sought mental health treatment since approximately 2003. (*Id*.).

There is substantial evidence, particularly in the form of medical opinions, to support the residual functional capacity established by the ALJ. The absence of objective and diagnostic medical evidence supports this determination. The ALJ's analysis of the claimant's credibility and subjective complaints, which this Court previously found appropriate, further supports the determination. Therefore, the Court finds no error in the ALJ's determination as to Plaintiff's residual functional capacity.

**C.     Step Five Errors**

At step five of the sequential analysis, the Commissioner carries the burden of proving the availability of jobs in the national economy that a claimant is capable of performing. *See Jordan v. Comm'r Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997). An ALJ is not required to rely on vocational examiner testimony to satisfy this burden in every case. Rather, "[a]n ALJ can use Medical-Vocational guidelines or 'grids,' found at 20 C.F.R. Part 404, Subpart P, Appendix 2, at the fifth step of the disability determination after the claimant has been found not to meet the requirements of a listed impairment, but found nevertheless incapable of performing past relevant work." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). The grids are a shortcut to avoid the need for vocational experts. *Hurt v. Sec'y of Health & Human Servs.,* 816 F.2d 1141, 1142 (6th Cir. 1987).

Sixth Circuit authority provides guidance regarding the appropriate use of the grids:

> [T]he SSA may not rely on the grids alone to meet its step-five burden where the evidence shows that a claimant has nonexertional impairments that preclude the

performance of a full range of work at a given level. Normally, where a claimant suffers from an impairment limiting only [his] strength (i.e. exertional limitations), the SSA can satisfy its burden through reference to the grids without considering direct evidence of the availability of jobs that the particular claimant can perform.

*Jordan*, 548 F.3d at 424 (citation omitted). A nonexertional impairment impacts a claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a & 416.969a. Examples of such impairments include nervousness, anxiety, depression, difficulty maintaining concentration, and difficulty understanding or remembering detailed instructions. *Id.*

The existence of a nonexertional impairment, such as one arising from a mental condition, may periodically make the application of the grid inappropriate. "A mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level before a mental impairment precludes the use" of the grids. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). An allegation of a nonexertional limit is insufficient to eliminate the grids as an option; rather the key factor is "whether the alleged impairment is severe enough to alter the conclusion that the claimant could do a full range of work at the specified level." *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 772 (6th Cir. 1987); *see also Collins v. Comm'r. of Soc. Sec.*, 357 F.App'x 663, 670 (6th Cir. 2009). However, "[r]eliance on the grids in the presence of nonexertional limitations *requires reliable evidence* of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (emphasis added).[9] Lastly, where the medical-vocational guidelines are inapplicable, it is proper for the ALJ to obtain vocational expert testimony. *See Damron v. Sec. of Health & Human Servs.*,

---

[9] The Commissioner notes the requirement that a nonexertional limit must be significant or severe enough to effect the ability to do a full range of work and cites a similar case, Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990). However, the Commissioner omits reference to the requirement that reliable evidence must exist to show the limitations are not so significant as to limit the range of work. The Commissioner also relies upon SSR 96-9p. However, this ruling is not particular informative here since its focus, as specified in the title of the ruling, is sedentary, not medium, work.

778 F.2d. 279 (6th Cir. 1985); *see also Tobeay v. Halter*, 21 F.App'x 309, 311 (6th Cir. 2001).

The Plaintiff believes the ALJ erred by solely relying upon the grids to determine that jobs exist in the national economy despite Plaintiff having nonexertional limitations, both mental and postural. He urges that VE testimony was required.

Regarding nonexertional postural limitations, the reviewers opined Plaintiff can frequently climb ramps, stairs, ropes and scaffolds and frequently balance, stoop, need, crouch and crawl, but only occasionally climb ladders. (Tr. 61, 89). Social Security Ruling 85-15 offers guidance regarding the impact of postural limitations on available jobs. For climbing and balancing, the ruling indicates that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." SSR 85-15. The most conservative climbing and balancing limitation for Plaintiff here is occasional ladder climbing. He can frequently perform the other climbing and balancing activities. The balancing and climbing limitations are unlikely to impact the available jobs for a person with Plaintiff's characteristics per the ruling, therefore use of the grids was not precluded.

As to stooping, kneeling, crouching and crawling, the ruling acknowledges these are more strenuous positions and provides:

> If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. However, because of the lifting require for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base. This is also true for crouching (bending the body downward and forward by bending both the legs and spine). However, crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world or work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).

SSR 85-15. Plaintiff is limited to frequent stooping. The occupational base for sedentary and light work (which a person with a medium RFC can perform under 20 C.F.R. §§ 404.1657 & 416.967)

is not impacted per the ruling. The ruling also contemplates that a person who can stoop frequently will be able to perform most medium jobs, meaning the occupational base for a person with a medium RFC is not eroded. Finally, crawling and kneeling viewed rare work activities by the ruling. Thus, an ability to frequently perform these posturals would have little, if any, impact on the occupational base. The use of the grids was not precluded by these postural limitations.

With regard to mental conditions, Plaintiff underwent a consultative mental examination as reflected in the report of Dr. Charlton Stanley and Mr. Arthur Stair. The report states, among other diagnoses, that Plaintiff has attention deficit hyper-activity disorder, borderline intellectual functioning, and dysthymic disorder. (Tr. 261-62). The ALJ listed Dr. Stanley's opinions as to Strimel's limitations, specifically that he is mildly to moderately impaired in his ability to understand simple information or directions with the capacity to put the information or directions to full use. (Tr. 23). The Decision also identifies the examiner's opinion that Plaintiff is moderately impaired in his ability to comprehend and implement multistep complex instructions, maintain persistence and concentration on tasks for a full workday and workweek and adapt to changes in the workplace due. (Tr. 23, 261-62). The ALJ gave Stanley's opinion "some" weight. (Tr. 23).

Two non-examining state agency reviewers also issued mental residual functional capacity assessments. In May 2013, Dr. Frank Kupstas opined that Strimel has moderate limitations in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychological based symptoms, perform at a consistent pace without an unreasonable number and length of rest breaks, interact with the general public and respond appropriately to changes in the work setting. (Tr. 62-63).

Dr. Rebecca Hansmann made a similar assessment in October 2013. (Tr. 90-92). She agreed with Dr. Kupstas' limitations and identified additional moderate limitations. Specifically,

Plaintiff has moderate limitations in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, work in coordination with and in proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisor and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 90-91). She wrote in a narrative that Plaintiff can occasionally interact with the public, co-workers and supervisors and would work better with things than with people. (Tr. 91). The ALJ gave the opinions of the reviewers "some" weight.

The ALJ ultimately found that Plaintiff only has the severe impairment of borderline intellectual functioning but acknowledged this condition "results in significant limitations of functioning and which were considered in arriving at the claimant's reduced residual functional capacity assessment." (Tr. 22). The ALJ then determined that the opinion reports regarding Plaintiff's mental abilities supported a medium residual functional capacity (which necessarily includes light and sedentary work) with a limitation to unskilled, entry-level positions. However, the ALJ neither explained why he only gave "some" weight to the opinions, nor identified which, if any, of the many restrictions or limitations listed by the experts he felt were applicable to Plaintiff in light of the acknowledgement that Plaintiff's mental condition causes significant limitations. In fact, it appears the ALJ did not adopt *any* of the limitations given the Decision's inexplicable silence on this topic.

The ALJ ultimately relied solely upon the Medical-Vocational Guidelines to find that there are "approximately 2,500 separate sedentary, light and medium unskilled jobs in the national economy" the Plaintiff could perform. (Tr. 24).[10]

The ALJ erred with regard to step five. The ALJ improperly failed to identify the nonexertional limits he adopted or accepted or, if he accepted none, why the opinions of the experts were ostensibly rejected as to these limits in favor of the ALJ's judgment. It seems implausible

---

[10] A vocational expert was present at the hearing (Tr. 30), but the ALJ did ask the VE any questions.

and inconsistent that the ALJ would accept none given the aforementioned acknowledgement of the impact of Plaintiff's borderline intellectual functioning. Further, wholly rejecting the expert medical or mental health opinions requires the ALJ to rely on other evidence or authority in the record to substitute his opinion for the examiner and reviewer opinions. *See Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009). If the ALJ adopted restrictions or impairments, which is not evident in this case, but found they were not sufficiently significant to preclude use of the grids, reliable evidence and an explanation would likewise be required under *Shelman.* The absence of an explanation makes it impossible for the claimant or the Court to follow the ALJ's reasoning on a matter that has a direct effect on the outcome of this case. See SSR 06-03P, 2006 WL 2329939 at *6 (stating "the adjudicator generally should explain the weight given to opinions from . . ."other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

The existence of four (4) to fourteen (14) moderate limitations arising from a mental condition the ALJ found to be severe clearly raises the obvious question of whether Plaintiff's ability to perform a full range of work at a given exertional level would be significantly affected by such nonexertional limitations. Reliable evidence demonstrating that nonexertional limits do not significantly limit the range of work available the claimant was thus required in order for the ALJ to rely solely upon the grids. *Shelman,* 821 F.2d at 321. Accordingly, the ALJ's non-disability finding must be reversed and this case remanded for further evaluation and consideration in accordance with the Court's Order.

## IV. CONCLUSION

Based upon the foregoing, Plaintiff's motion for judgment on the pleadings [Doc. 18] is GRANTED and the Commissioner's motion for summary judgment [Doc. 20] is DENIED for the reasons stated herein. The matter is remanded for proceedings in accordance with this Order.

16

SO ORDERED:

                                            s/ Clifton L. Corker
                                            UNITED STATES MAGISTRATE JUDGE